Next case for argument is 15-1661, Fellows v. ACCO Brands Corporation. Give you a chance to get settled. Mr. Collins, whenever you're ready. May it please the Court. My name is Brian Collins. I represent Fellows. I'm here with Robert Fuhrer from my firm. The technology here relates to shredders that have thickness detectors that are designed to prevent jamming. They tell when paper is too thick, sees the shredder's maximum capacity, and they jam. The invention here is a refinement over that basic idea. And the invention is the ability to detect when the maximum thickness violation is due to an impatient shredder shoving in extra paper, what we call additional articles. So this would not be the situation where someone just puts in 14 sheets into a 10-sheet shredder. It's where they put 7 sheets into a 10-sheet shredder. They start shredding it, gets three-quarters of the way through, and they just can't wait. They shove in 7 more. That overlapping 14 sheets here, that's what's going to jam the shredder. And that was what was realized after the base idea that people in the market call fast feed or overlapping feed creates an overlap that jams the shredder. Is it your argument, Counselor, that the board erred in combining two possible embodiments that are found in the reference? That is one of the errors we alleged, yes, sir. And if you would like me to address that straight out right now? The error there is what you have to do is fundamentally look at what the ARIES has two embodiments. The first embodiment is your traditional one thickness detector, a shredder with a thickness detector with one threshold, a maximum of 10 sheets. If you put in 8 or 9 sheets, it shreds. If you put in 11 sheets, it doesn't shred. It stops. The second embodiment of the ARIES patent has the same thickness detector with it. Are you saying there's no motivation or that it's nearly insufficient for the board to combine the two embodiments? I'd say there's no reason to combine the two embodiments, and they would not result in the claims match. Do you agree that a board could combine two separate embodiments if there was motivation to do that, or not motivation, a reason to do that? Oh, sure. If there's a reason to combine, to have all the elements of the claim, that's KSR, and we're saying that neither of those is the case in this situation. To address the second embodiment of the ARIES shredder, it's the thickness detector with two thresholds. Now, we'll take the maximum thickness threshold as the one at 10 sheets again, and then they have what they call an intermediate threshold. The intermediate threshold is 7 sheets we'll pick. The purpose of that one is to allow 8 or 9 sheets to be fed into the shredder, and that shredder will continue running for some period of time. It is something that is right under the maximum, close to the maximum, much like if you're driving your car and accelerating, the tachometer's in the red. The engine's going to overheat. This is a timer that's designed to allow the shredder to run up near its maximum capacity, but not in excess of it, because if you exceed that maximum capacity, the shredder will shut off because it has the maximum thickness threshold. And that's fundamentally a very, very different concept than what the Fellow's invention was. I understood it a little differently. I thought ARIES' second embodiment was about recognizing there can be waving and flapping of the sheets as they're being fed into the shredder. And so, therefore, we're going to account for that practice by allowing for a certain time delay once that some thickness threshold has been violated, but not immediately turn off the motor because we want to account for waving and flapping. But then after a certain period of time, if that threshold is still being violated, then the motor gets shut off. That, actually, if you think about it in context, is what they really say is that waving and flapping can jam the shredder. We crossed Mr. ARIES on that question. He said that can't really happen. And you also have to recognize the waving and flapping could happen at the 10-sheet maximum, right? And they really weren't solving it there. So if you look at it in context, if you have a shredder that's designed to handle 10 sheets and someone puts eight or nine sheets into it, the time period does need to be long enough for them to finish the eight or nine sheets. It's not on the order of the high frequency that waving and flapping would cause because we know it's been marketed as a 10-sheet capacity shredder. That means it's got to finish those eight or nine sheets. Now, admittedly, we'll say any amount of time that is on that order will also ignore paper flapping. As another example, ARIES came up with a later invention. He called Sense Then Ignore, and it's a slightly later patent. I'm not sure. Are you disagreeing with my understanding of ARIES? Because I read it, and it kept talking about waving and flapping multiple times and kept talking about having a time delay to account for waving and flapping. And then if the time delay elapses and there's still a violation detected, then it shuts off the motor. What's wrong with what I just summarized about that portion of the ARIES reference? I would say that way that time delays will not have a flapping problem. You're right about that. But we don't think ARIES fully understood what the problem was because it's not just flapping the intermediate threshold. There's got to be flapping up near the maximum threshold, and the real problem is the additional articles that are inserted that exceed the maximum threshold. And I think if I talk about that Sense Then Ignore invention, that might help you understand it. The ARIES Sense Then Ignore improvement, which he filed later, the way that worked is once the shredder starts, the thickness detector is ignored entirely. It doesn't fall victim to flapping or waving at all because it pays no attention to the thickness detector whatsoever. It can flap and wave. I can put 10 more pieces of paper in and it'd jam. It has sacrificed the protective measure entirely in that situation. Which situation? I'm sorry. The Sense Then Ignore type approach that we discussed in the briefs. But you're talking about a different application, right? You're talking about something other than what's at issue in this case, right? It actually is of record, but I'm trying to give it to some context about the difference between understanding what the flapping issue is versus the additional article issues. And I'm giving you an example of where you can have a system that does not suffer the flapping problem. It does not because the thickness detector is being ignored ad infinitum. But you can put additional articles in it and jam the shredder. In this specification, this patent is all about preventing shredder jams. And what I'm trying to address is Jen's point is you're right. If I set an intermediate threshold timer that is long enough to continue shredding 8 or 9 sheets, it will also not fall victim to the flapping or paper. It will not set a false alarm to the 8 or 9 sheets. Your premise is correct. But my point is that does not necessarily mean that it is detecting additional articles or the assertion of additional articles. Okay, this goes back to your claim construction argument, right? It goes to the claim construction argument and it goes to the reason it came out. But if we were to conclude your claim construction argument is waived, then this aspect of ARIES matches up with the criterion limitation as it was construed by the patent board. Is that fair to say? If you were to construe that our claim construction issue was waived entirely and that any time delay, then the idea would be that would be some type of criterion. But we would say it's not the type of criterion you would move from one threshold to the other. There would still be no reason for the relocation of the timer, so to speak. We still have the substantial evidence argument. I guess what I'm wondering is assuming the claim construction is right or the dispute has been waived, then why isn't the ARIES embodiment number 2 anticipatory of your claim? It's not anticipatory. The fact that it has a second thickness detector that's detecting a second threshold, I understand that. But for purposes of your claim, it's an open-ended claim. We're only talking about a particular thickness detector that has a certain criterion. And if the intermediate threshold detector in ARIES embodiment number 2 matches cleanly onto that criterion limitation, then it seems to me we have a section 102 anticipatory of reference. I can answer that question because the claim – the focus of the dispute was on the criterion issue. The claim also requires that the maximum threshold is something that when violated, the shredder does not run. You violate that maximum threshold upon the initial insertion. The shredder does not run. Then while the shredder is running – this is where the criterion becomes important. It is while the shredder is running is the criterion violated. That intermediate threshold that you're referring to does not prevent the shredder from starting at all. It's something that allows the shredder to run for some – it clearly says a certain amount of time, some period of time that continues enabled shredding, I believe is the words that they use in the ARIES patent. It is not the kind of maximum thickness threshold that decides whether to start or stop the shredder. So the claim has that requirement. And nobody disputed that that requirement was met by the other maximum thickness threshold. Right, and the board agreed that was that type of maximum thickness threshold. And I think the board actually – it may not have been in their decision to institute the final decision. I think everyone agreed it wasn't in anticipation because the timer on the intermediate threshold didn't meet that part of the claim. So let's get back to the crux of your appeal, which is the claim construction. What was it about the institution's decision to claim construction that was wrong? Well, the institution's – the most blatant thing is if you look at it is – if you were to compare the two because they have – in the final written decision, they put them side by side. The claim language is at least one criterion corresponding to the insertion of additional articles. If you look at the claim construction, it just says a time delay that is set when the measured thickness exceeds a certain amount. It drops the requirement that this be the type of detection that corresponds to additional articles. That requirement fell out of the claim construction entirely. I mean we argued repeatedly through the case that that is just an upper time limit on how long Erie's shredder can run. It is not the kind that differentiates between – In your preliminary response, it seemed like you were happy with that kind of claim construction, or at least you were not resisting it when you saw that the petitioner was arguing that in the alternative. And then you pointed out why even though the petitioner didn't like its own proposed alternative construction, that construction would be appropriate. And you cited your own prosecution history statements to that effect. Sure, and I can point out the history with that is ACCO's original construction was the criterion can only be an additional threshold. It can only be a second threshold trying to limit it to one of the embodiments in Mr. Matlin or Fellow's patent. And we said, well, wait, they acknowledge there's another possible construction that can include time delays. We didn't say any time delays. We never said all time delays. And we gave them the example of the type that would be included, the high frequency type, very high frequency flapping. If the time delay is on the order of that, it gets ignored. If it was longer than that, you would conclude that to be someone having inserted additional articles because that is not the kind of thing that flaps, right? That would be the kind of thing that pushes the thickness detector for a period of time that's longer than just some flapping. And we explained that to them. We weren't saying or taking the position any or all time delays. And we actually clearly argued in the briefs that the type of run-on or upper time limit delay that Ares has in his patent is not that type of criterion. And we started the oral argument for the board to make clear that position that not all time delays are considered this type of criterion. We were actually just responding to their argument that no time delay could be. We were not trying to open the door to conclude all. Okay, so you've lost me here. So my understanding was the board accepted your definition including the time, at least some time delay, right? What's your issue then with the claim construction? Because they took it a step further and included all types of time delays irrespective of the purpose of why they're used, how they're implemented, and what role they play in the shredder. The Ares time delay is just a time limit on how long its shredder can perform right up under that maximum, close to its maximum. How long can it run in the red, so to speak, in the example of a car? That's the kind of time delay it is, is how long can it keep shredding 8 or 9 pieces of paper in a 10-sheet shredder, not 4 or 5 where it's not working as hard right up under that. That's a totally different time delay than the type that differentiates fluttering paper from people putting additional articles. And I go back to that sense that ignore. That's something that can't differentiate. Mr. Ares even admitted his timer, his 938 patent can't differentiate those either. Well, if we read your preliminary response as not resisting the proposed alternative construction by the petitioner, that some time delay is what is encompassed by this criterion limitation, then would you agree that therefore then there's no claim construction debate left in this appeal? I don't think that's right because the preliminary response, we're not even obligated to offer one at all. I think you have to look at the totality of the record. And we came clearly to the board. Now, they said, I mean, let's be perfectly honest. The board said in its decision institute, we agree with fellows. We had given them the discretionary definition, and we had given them our example of how a time delay can be included. And honestly, we thought they were on our side with that. Then the final written decision came out. But let me say this. In our patent owner's report, we clearly argued that the type of time delay that is Ares is not included within the type of criteria we're talking about. I mean, we at least were clear that that was our view of the claim construction. We went into the oral hearing, and we said what our view of the claim construction was, not all time delays are in. So whatever might have been said in the preliminary response, if it had any level of in-clarity what our position is, the whole record made it there. And that record runs up to the final written decision. You're not obligated. The preliminary response is not the end of the equation. What does it mean to be corresponding to an insertion of one or more articles? Would that mean like you've detected something that's just consistent with the insertion of one or more articles without literally inserting additional articles? Right. And I'll give you the example. This is a shredder. Can you just say yes or no? Is that right? Yes. Yeah. It would have to be something that has a level of certainty with it. Okay. So the claim language doesn't actually require the insertion of additional articles. It just requires something that's consistent with detecting the insertion of additional articles. That's correct. It has to be something that is characteristic of additional articles. But not the actual literal insertion of additional articles, which is how you let off this oral argument. No, I was trying to say it's the insertion of additional articles differentiated from something that's acceptable, like flapping. They're trying to identify this condition that someone has inserted additional articles after the shredder has started running. I mean that's a very key point is it's after the shredder has started running because that's when the flapping is occurring. So the idea is if there's – if it truly is an extra thick stack of articles that have been fed into the shredder, and after a time delay, you discover that it's not – there's no waving or fluttering going on. It's because you're detecting something that's extra thick. Then you shut off the machine, right? When you say extra thick, are you talking about one extra thick stack? Something that's violating whatever the threshold is. Then allow me to break that down. If you would put in an extra thick stack initially – we'll go to my 14 sheets example I used earlier – into a 10-sheet shredder, and you just put 14 sheets, the criterion never comes into play because the shredder doesn't start. That goes to the other claim limitations that control not starting preventing operation. Okay, so we're in your second. Go to my second one where you put in seven. And then you put in seven more. Right. Let's start off – let's say that seven sheets of flapping. It's not going to detect that as additional articles because that's not a characteristic of additional article. And then you put in seven more. That's when the shredder reacts. And in the dependent claims, which is very important here, that's where it prevents further operation. The ARIE system tries to keep going. That criterion is a run-on timer that sets an upper limit on how long you can keep going under the maximum. You can't really move it to the maximum and use that same logic for things that are over the maximum because we know the shredder cannot handle it. That's where the logic of moving that timer breaks down and the reason why that timer does not meet the criterion corresponding to the insertion of additional articles. Okay, we're well over your time. We'll restore two minutes. Let's get to the other slide. Thank you, ma'am. May it please the Court. Steven Tribas on behalf of Echobrands. Your Honors, this is a straightforward case, and it begins with the issue that the claim construction argument that Fellows brings was waived. The claim construction that was used in the institution decision was, as the Board said, Fellows claim construction, and in their patent owner's statement after institution and an oral argument before the Board, they never brought this issue up. They never criticized the claim construction of the Board. The Board, as a matter of fact, in its final written decision says that there was no issue of claim construction that was being contested by the parties. Excuse me. Therefore, that issue is waived. And on the merits of the claim construction, the Board got it correct. They, on page 8 of the final written decision, they go through once again the fact that they're giving the claim terms the ordinary and customary meaning that had been added. And then they go on with regard to the criterion corresponding to the insertion of additional articles, and they address the only dispute that was in before them with regard to the parties, the argument about whether the time delay was or wasn't part of that criteria, and they resolve that dispute. Having resolved that dispute, they went on then to assess the issue of obviousness. And here, in a well-founded decision, they saw that in this predictable arc, a single reference, the Ares 938 patent, rendered obvious the claims of the 767 patent. Can we go back to the claim construction? I'm trying to understand how this claim is coherent. There's two where-in clauses, right? Yes, sir. The first where-in clause says if the detector detects paper below the threshold, the motor runs. If the detector detects something that's above the threshold, the motor does not operate. That's how I understand the first where-in clause. The second where-in clause says after detecting a violation of the threshold, you're still checking around to see if some other criterion has taken effect. And if so, then you do some predetermined operation. Well, at that point, the motor's already off, and there's no cutting going on. So what's going on with looking for another criterion? Your Honor, the claim is not a model of clarity with regard to this, but looking at the 767 patent and what it describes, what it is trying to differentiate between is it's trying to differentiate between essentially a false positive where the threshold detection, the thickness detector detects a violation of some type, but it's a false positive. And in one of those areas, it's this fluttering or waving that can cause that. Mr. Collins talked about seven sheets. When the seven sheets get put in, when they begin to be shredded and they start moving, it's possible that the threshold becomes violated because of the movement of these sheets. And the patent is directed to, and what the claim is attempting to differentiate between, is a real violation where there is a potential jam condition where you want the motor to stop, and a false positive that is being caused by some other. So the criteria is an assessment with regard to whether the violation, in fact, is correct. But hasn't the motor already been turned off? The way the claim reads directly through, if you ignore what the description of the claim or the description of the invention and the specification, it does appear that way. But when looking at the totality of it, I believe the understanding of this claim is that it's looking for two things happening at the same time, that there is a violation as well as a criteria indicating that that violation is being caused by too much paper, by the insertion of additional orders. So when I read the second where in clause, I should be pretending that the motor is still on? I think, Your Honor, that's the only realistic way to read this because if the violation has occurred and the motor is shut, then we're down to the pure prior art situation of something that didn't have any additional criteria involved. And there simply is a thickness detector, and if there's a violation, the detector shuts it off. And if there is no violation, the detector doesn't shut it off. That would not differentiate the situation where there are additional articles being inserted from the situation where a violation is being caused by some other reason. Here, before the Board, the issue that Fellows was raising really was the issue at the heart of the obviousness argument about whether there was a reason to apply the time delay teaching in Ares to the threshold in order to come up with the claim. And the Board specifically addressed this at A21, in the opinion, and said that the immediate shutdown of the shredder motor was beneficial to protect against shredder damage, but that the triggering of a time delay to account for this waving or flapping operates as a convenience to alleviate unnecessary motor shutdown. So the Board specifically addressed the question that was being fought by Fellows before the Board, which is the question of whether this timing delay that was set forth within the Ares 938 patent could be used and whether there was a reason for that. And the reason that the Board came to, here and throughout its opinion, is that the person of ordinary skill in the art would apply that time delay threshold as a way of criterion of determining the difference between a false positive, and the waving and flapping on the one hand, and too much paper on the other hand. And isn't that the entire purpose of the first intermediate thickness detector in embodiment number two of Ares? Yes, Your Honor. The embodiment two in Ares is, you might say, a little bit more complicated in a sense, where they have these two separate thresholds. One of the things here I think that complicates things is the terminology of a maximum thickness threshold, because the maximum thickness threshold is not the same as the capacity of the shredder itself. So in that second case, Ares developed something that was a little bit more involved, where he was using double thresholds. But the teaching on the reason for the timing was exactly the same teaching that allows it to be applied to a machine that did not use two thresholds, but used a single threshold and could still differentiate between the two situations of a false positive caused by the waving or flapping and the actual insertion of additional articles. This use of the time delay and the reason for doing it, and Mr. Ares talked about in column 10 of the Ares 938 patent, he talks about that it is to be set for an appropriate amount of time. So this is not something that's going to be set for a long period of time. It's going to be set for an appropriate amount of time to determine the difference between waving and flapping on the one hand and something else going on on the other hand. When that is being used and it can be set with regard to any threshold, there isn't a teaching, there isn't anything that would direct the person of ordinary skill in the art away from using that idea to apply to an embodiment like the first embodiment in Ares, where there is a single so-called maximum threshold that is being used. So here there is a clear case of obviousness where all of the elements in the claim are set forth in this single reference where there is a reason for the person of ordinary skill in the art to take the teaching with regard to the time delay feature and apply it to a shredder that has a maximum thickness threshold and the result of that is exactly the type of shredder that is being talked about by the 767 patent, a shredder that can differentiate between these two different aspects, whether there is a false positive or whether in fact there is too much paper and there should be a shutdown with regard to this. The teaching is clear that it is to be done for an appropriate period of time. There is nothing in the record to support the idea in Fellow's briefs that this is supposed to be set for a long period of time in terms of minutes or hours. It's clear that the Ares 938 patent is talking about, and this was explained also in Mr. Ares' declaration, which the board credited. Fellows challenged the board to throw out the Ares declaration and the board specifically considered the credibility of that determination and believed that it was entitled to wait, gave it appropriate wait, and made the findings that it made with regard to the obviousness consideration here. This is a classic case where all of the elements are present. This is a predictable art, and the reference itself, as well as the additional evidence in the Ares declaration, gives an explanation as to how the person of ordinary skill in the art would apply this in order to get to the exact claims that are set forth in the 767 patent. The board itself actually even called this strong evidence of obviousness. We submit, Your Honors, that really what Fellows is trying to do here is challenge that very strong obviousness. They don't want to deal with the substantial evidence standards, so they have rewritten this as a claim construction argument, but there is no claim construction argument here that was not waived. The claim construction is proper, and the board's analysis was correct in this area. If Your Honors have no further questions, I'll yield the rest of my time. Thank you. Judge Chen, real quick, I think you had a concern about the reading of the claim. I'll walk you through that real quick. If you read the claim, the first wearing clause says, when the article being received prior to operation of the motor, so this is before you've started, the controller either operates the motor in the shredding direction, and that's if it's less than the threshold. The next clause is modified with the language that it's monitored during operation of the threshold. So the first wearing clause presents the two options, start, don't start. The second one is continual monitoring after it's started. So I just wanted to be clear that it was not a situation where it hasn't started and there's nothing further to do. I just wanted to clarify that aspect of the claim reading. A couple of points on that is there is no proof whatsoever in the record, Mr. Arias didn't testify, that the system or the time delay in the ACOS machine is designed to shut off in response to additional articles. None whatsoever. It does not differentiate between them. The record was clear, and the board treated it as a tradeoff. It was a tradeoff where you set a time delay to avoid flapping, but you give up the shutdown protection. I want to repeat a question I had before. Sure. When it says to correspond to an insertion of one or more articles, or additional articles, it doesn't necessarily require and mandate the actual insertion of additional articles, right? It can be detecting something that's consistent with the insertion, which could be that all along you just had a certain thickness that went above the threshold. Not all along, because if you started off with too many papers in the initial situation where you put 14 in outright, it won't start. The first wearing clause prevents it from starting. I'm just trying to understand what does it mean to be corresponding to, and could it just be something that's consistent with? It doesn't mean is. Right, and fluttering is something that's not consistent with it. In a time delay situation, it would have to be something that's slighter along than fluttering. Because, you know, in your patent owner response, you talk about the violation is consistent with the insertion of additional articles into the shredder. That's at A365. That's right. It would be consistent with a degree of certainty that we know it's additional articles versus something acceptable. Page 13. In the middle of the page, you quote something that's from your preliminary response. And the site is A365 to 366? Yes. But that's not your preliminary response. That's your response after institution, that quote. Patent owner's response. My apologies if I got the wrong document. And then the other problem is that the quote is different than the actual quote from your patent owner response. Okay. By determining if a criterion is met in addition to simply detecting. Keep going. The controller determined the violation is consistent with. An acceptable condition, e.g. paper. e.g. paper flutter, which requires an or wrinkle, which requires no additional action, or the flutter is. Yeah, there is some words. Or the violation is consistent with the insertion of additional articles into the shredder.  That's an or. In your response. Yes. It doesn't say that. It says something else. It says or a change caused by the insertion of. Right. That's a typo, but I think the message was consistent. So your bravery is just trying to get me to believe that what you said in your preliminary response before the institution decision is that the claim calls for an actual insertion of additional articles into the shredder, which is causing the threshold detection. Whereas it wasn't the preliminary response, it was the patent owner response. And in the patent owner response, you just said it's consistent with the insertion of additional articles into the shredder. Yes, sir. You see how those two things are different, let alone the fact that the quote is misquoted? I do not believe. There's absolutely no intention to mislead whatsoever, Your Honor. But the absolute point is, and we've made this throughout, is if it's consistent with an additional article, that is something that corresponds to the additional article. If it's consistent with something that is more acceptable, like a flutter, it's trying to differentiate. I will look into this and make sure if I do not get this from the right spot, but I do not believe there is any intent to mislead on that, or this misquote, or this represents a different concept.  Time is up. Thank you, ma'am.